Dear Representative Nelson and Ms. Campbell:
This office has received your requests for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Does the Oklahoma Board of Dentistry ("Dental Board") have authority under the State Dental Act ("Act"), 59 O.S. 2001 Supp. 2008, §§ 328.1 — 328.51a, to determine whether the School of Dentistry ("School") of the University of Oklahoma ("University") may offer a "Community Dental Health Coordinator Program" ("CDHC Program") in which a person, upon completion, becomes a Community Dental Health Coordinator ("CDHC"), a dental health worker who is neither a dentist nor a dental hygienist?
 2. Does the Dental Board have the power or responsibility under the Act to take action to stop the practice of dentistry or dental hygiene by persons who are neither licensed as dentists or dental hygienists, nor dental or dental hygiene students at the School, who perform clinical dental or hygiene services on human subjects during participation in a program at the School? *Page 2 
 3. Does the Dental Board have the power or responsibility under the Act to take action against persons who supervise, instruct or assist non-students in practicing dentistry or dental hygiene on human subjects during participation in a program at the School?
 I. BACKGROUND A. The Program at Issue
It is the Attorney General's understanding that the questions posed pertain to a pilot program in which the University is participating ("Pilot Program") with the American Dental Association ("ADA") and Rio Salado College ("Rio Salado").
The background information leading to the questions asked was provided in a letter by Peggy L. Clay, Associate General Counsel at the Office of Legal Counsel, University of Oklahoma Health Sciences Center dated September 25, 2009 [hereinafter Clay Letter]. A copy of the letter and attached exhibits are on file with the University. The Clay Letter in pertinent part states:
 The ADA circulated a Call for Letters of Interest to develop and implement the ADA's Pilot Program to train a new mid-level allied dental health professional, the Community Dental Health Coordinator ("CDHC"). The CDHC will work in rural, urban and Native American underserved communities where residents have no or limited access to dental care.[1] The intent is for the CDHC to work in collaboration with health and community organizations to promote oral health and provide community-focused oral health promotion, prevention and coordination of dental care.
 . . . Prior to submitting its formal response, the COD [College of Dentistry] informed the Oklahoma Board of Dentistry ("Board") of its interest in the Pilot Program and sought the Board's support for the University's participation. By letter dated March 28, 2007, Linda Campbell, Executive Director for the Board, submitted a letter to the ADA supporting discussion of the University's participation in the development of a new training program model.[2] On April 4, the COD submitted its formal Letter of Interest to the ADA.[3] . . .
 In July 2007, the COD formally introduced the CDHC Pilot Program to the Board to obtain support to pursue appointment by the ADA as a site to operate the rural component of the research program in Federally Qualified Health Centers ("FQHC"), Indian Health Service ("IHS") Clinics and tribally run health facilities in rural *Page 3 
Oklahoma communities. By letter dated November 5, 2007, Ms. Campbell advised the COD in pertinent part:
 The Board supports the concept of the pilot program pending further review of the actual curriculum and the functions of the individual[s] in their specific clinical requirements.[4]
 . . . On December 3, 2007, the ADA advised the COD that it had been selected as a pilot training site for the Pilot Program.[6]
On December 6, 2007, Ms. Campbell requested a copy of the actual curriculum for the Pilot Program.[7] Because the curriculum was developed and owned by the ADA, the COD could not share the curriculum with the Board until authorized by the ADA, which occurred on June 12 and July 22, 2008.8a, 8b
On August 1, 2008, the COD presented the initial draft of the Pilot Program curriculum to the Board. The ADA required a commitment from the Board to conduct the Pilot Program in Oklahoma. . . .
[Footnotes]
 [1] See Exhibit 1, American Dental Association Call for Letters of Interest.
 [2] See Exhibit 2, Letter from Linda Campbell to ADA dated March 28, 2007.
 [3] See Exhibit 3, COD submission of formal letter of interest to the ADA dated April 4, 2007.
 3a-3m See Exhibits 3a-3m, Letters of Support.
 [4] See Exhibit 4, Letter from Linda Campbell to COD dated November 5, 2007.
 [5] See Exhibit 5, Letter from ODA to COD dated November 8, 2007.
 [6] See Exhibit 6, Letter from ADA to COD dated December 3, 2007.
 [7] See Exhibit 7, Letter from Linda Campbell to COD dated December 6, 2007.
 8a, 8b See Exhibits 8a, 8b, Letter from ADA to COD dated June 12 and July 22, 2008.
 [9] See Exhibit 9, Letter from Dr. Horn to COD, dated August 12, 2008.
Id.
The President of the Dental Board, Dr. Bruce Horn, sent a letter dated August 12, 2008, to the School's Dean, stating in pertinent part:
 The Oklahoma Board of Dentistry supports the concept for the Community Dental Health Coordinator pilot program at the University of Oklahoma College Of Dentistry based on comments and reviewed outline and not based on the contents of the actual draft curriculum presented.
 The Board officially notes the Federally Qualified Health Centers in Oklahoma to be utilized. The implementation of the training program, at specified centers, may be *Page 4 
subject to state authority. A request for clarification from the office of the Attorney General can be requested when necessary.
Ex. 9 to Clay Letter.
The University executed a Pilot Program Agreement with the ADA on March 3, 2009 ("Agreement"). Clay Letter, p. 3; see also
ex. 10. According to the Agreement, the Pilot Program consists of two primary components, on-line instruction and clinical experience.Id. ex. 10, p. 1. According to the School, the first six participants in the Pilot Program began their on-line training on March 16, 2009 through Rio Salado. Clay Letter, p. 3. "No participant has yet [begun] the [clinical] training component of the program, which is still under development." Id. As of the date of the Clay Letter, no participants had performed any dental services on human subjects as a part of the CDHC program.Id. p. 4. In conjunction with the on-line training, certain School faculty members have conducted or will conduct in-person assessments of the participants, including a demonstration of specific skill sets. Id.
 B. The Authority of the Oklahoma Board of Dentistry
The Oklahoma Constitution authorized the Legislature to create the entity now known as the Oklahoma Board of Dentistry. OKLA. CONST. art. V, § 39. Pursuant to that constitutional mandate the Oklahoma Legislature enacted the Act to govern dentists. 59 O.S. 2001 Supp. 2008, §§ 328.1 — 328.51a. Additionally the Dental Board, pursuant to its authority under 59 O.S.Supp. 2008, § 328.15[59-328.15](A), promulgated rules under the Administrative Procedures Act. See OAC195:1-1-1 — 35-1-5.
The Dental Board has statutory authority to license and regulate dentists and dental hygienists in Oklahoma.[1] 59 O.S.Supp. 2008, §§ 328.15[59-328.15] (B)(1), (8); 328.21(A).[2] Persons applying for licenses as dentists or dental hygienists must be graduates of accredited dental colleges, as to dentists, and dental *Page 5 
hygiene programs as to dental hygienists.Id. § 328.21(C)(1), (2). The college or program, in either case, shall be accredited by the Commission on Dental Accreditation of the American Dental Association.Id. § 328.3(1), (2).
 C. Creation and Governance of the University of Oklahoma School of Dentistry
The authority for and governance of the Oklahoma System of Higher Education, including the School, is set out in the Oklahoma Constitution and statutes. The State Regents for Higher Education ("State Regents") and the University Board of Regents possess the authority to regulate or approve education, including curriculum, teaching and research at the University. See OKLA. CONST. art XIIIA, § 2; OKLA. CONST. art. XIII, § 8; seealso 70 O.S.Supp. 2008, §§ 3206[70-3206], 3305.
The Constitution states:
 The Regents shall constitute a co-ordinating board of control for all State institutions described in Section 1 hereof, with the following specific powers: (1) it shall prescribe standards of higher education applicable to each institution; (2) it shall determine the functions and courses of study in each of the institutions to conform to the standards prescribed; (3) it shall grant degrees and other forms of academic recognition for completion of the prescribed courses in all of such institutions; (4) it shall recommend to the State Legislature the budget allocations to each institution, and; (5) it shall have the power to recommend to the Legislature proposed fees for all of such institutions, and any such fees shall be effective only within the limits prescribed by the Legislature.
OKLA. CONST. art. XIIIA, § 2 (emphasis added).
The University Board of Regents has the statutory authority to govern the University:
 The Board of Regents of the University of Oklahoma shall have the supervision, management and control of the University of Oklahoma and all its integral parts, of Cameron University, and of Rogers State University and shall have the following additional powers and duties:
 (a) Adopt such rules and regulations as it deems necessary to govern the University of Oklahoma, Cameron University, and Rogers State University.
 . . . . *Page 6 
 (o) Do all things necessary and convenient to carry out the powers expressly granted to it by the Constitution and the laws of the state, or to make the University of Oklahoma, Cameron University, and Rogers State University effective for the purposes for which they are maintained and operated and the enumeration herein of certain powers and immunities of the Board of Regents of the University shall not be construed as in derogation or as a limitation of the powers and immunities properly belonging to the Board in the government of the University of Oklahoma, Cameron University, and Rogers State University by virtue of Section 8, Article XIII of the Constitution.
70 O.S.Supp. 2008, § 3305[70-3305] (emphasis added).
Specifically, the University's Board of Regents and the State Regents are statutorily authorized and directed to act on behalf of the School.
 (a) The University of Oklahoma School of Dentistry is hereby created for instruction in Dentistry.[3] The Board of Regents of the University of Oklahoma and the Oklahoma State Regents for Higher Education are hereby authorized and directed to establish and maintain the School of Dentistry and to provide for courses of instruction in Dentistry as will provide a thorough knowledge of Dentistry, and all subjects pertaining thereto, and that will meet the requirements of the Council on Dental Education, the American Association of Dental Schools and other such educational associations of like standard concerned with Dentistry. *Page 7 
 (b) The Oklahoma State Regents for Higher Education, through the Board of Regents of the University of Oklahoma, shall have authority to confer degrees and issue diplomas, and fix a standard of grades for all students attending the School of Dentistry. The School of Dentistry shall have regular courses leading to degrees, and such other special courses as approved by the Oklahoma State Regents for Higher Education.[4]
70 O.S. 2001, § 3308[70-3308] (emphasis added) (footnotes added).
 II. DOES THE DENTAL BOARD HAVE AUTHORITY TO DETERMINE WHETHER THE SCHOOL MAY OFFER THE ADA PILOT CDHC PROGRAM?
With this background we address your first question, whether the Dental Board has the authority to determine whether the School may offer the ADA CDHC Program in which a person, upon completion, becomes a CDHC, a dental heath professional who is neither a dentist nor a dental hygienist.
The Dental Board statutes refer to dental schools in only one subsection, the subsection which sets out certain practices which are not prevented by the lack of a license to practice dentistry:
 B. The fact that a person uses any dental degree, or designation, or any card, device, directory, poster, sign or other media representing oneself to be a dentist shall be prima facie evidence that the person is engaged in the practice of dentistry; provided that nothing in this section shall be so construed as to prevent the following:
 . . . . *Page 8 
 (3) Dental schools or colleges, as now conducted and approved, or as may be approved, and the practice of dentistry by students in dental schools, colleges or hospitals, approved by the Board, when acting under the direction and supervision of licensed dentists or dentists holding properly issued permits acting as instructors[.]
59 O.S.Supp. 2008, § 328.19[59-328.19]. That subsection effectively provides that a "student" in a dental school, such as the University School, who is supervised by a dentist is not prevented from "practic[ing] dentistry" which, without the above provision, would be illegal.See id. § 328.49(B).
As it is set out in the Oklahoma Constitution and related statutes, all authority and governance concerning what programs and courses are to be offered rest with the University Board of Regents or the State Board of Regents. The Dental Board has no authority to determine whether the School may offer the CDHC Program. *Page 9 
 III. DOES THE DENTAL BOARD HAVE THE POWER OR RESPONSIBILITY UNDER THE ACT TO TAKE ACTION TO STOP THE PRACTICE OF DENTISTRY OR DENTAL HYGIENE BY PERSONS WHO ARE NEITHER LICENSED AS DENTISTS OR DENTAL HYGIENISTS NOR DENTAL OR DENTAL HYGIENE STUDENTS AT THE SCHOOL, WHO PERFORM CLINICAL DENTAL OR HYGIENE SERVICES ON HUMAN SUBJECTS DURING PARTICIPATION IN A PROGRAM AT THE SCHOOL?
Your next question asks whether the Dental Board has the power or responsibility to stop any illegal practice of dentistry or dental hygiene by persons who, while not students at the School, are participating in the Pilot Program at the School.[5] *Page 10 
As set forth in Part II above, acts normally defined as constituting the practice of dentistry and illegal practice, if practiced by anyone not licensed by the Dental Board, are not considered the illegal practice of dentistry when conducted by a "student" under the supervision of a licensed dentist or properly permitted instructor. 59 O.S.Supp. 2008, § 328.19[59-328.19](B)(3). Whether a person such as a CDHC Pilot Program participant could conduct acts normally considered the practice of dentistry during any part of the program conducted by the School would depend on whether the participant is a "student" in the School. Id. Whether a program participant would be considered a student by the School[6] is a question of fact beyond the scope of an Attorney General's Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).[7] Having determined that persons who are not students at the School, but who practice dentistry or dental hygiene while participating in the Pilot Program at the School, may be acting illegally under the Act, we next examine whether the Act gives the Dental Board the power or responsibility to take action against such persons.
The Act contains a specific statute that could apply to unlicensed, non-student participants in a program operated by the School. See 59 O.S.Supp. 2008, § 328.49[59-328.49]. In sum, the statute provides that the Dental Board may seek an injunction to restrain a person from the unlicensed practice of dentistry or dental hygiene, or from aiding or abetting such unlicensed practice.Id. § 328.49(D). Additionally, the unlicensed practice of dentistry or dental hygiene may result in felony criminal charges that can lead to imprisonment and monetary fines.Id. § 328.49(C)(2). The Dental Board must report a violation constituting unlicensed practice, or aiding or abetting the same, to the appropriate district attorney.Id. § 328.49(C)(1). A person who is not a student at the School but who is conducting acts of dentistry or dental hygiene as a participant in a School program could be in violation of this statute. Thus, under Section 328.49(A)-(D) the Dental Board has the power or responsibility, depending upon the facts of a particular situation, to take action to stop the unlicensed practice of dentistry or dental hygiene by non-student participants in a program at the School. Whether an action taken by an unlicensed participant as part of a School program could be considered the unlicensed practice of *Page 11 
dentistry or dental hygiene is a question of fact beyond the scope of an Attorney General's Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
 IV. DOES THE DENTAL BOARD HAVE THE POWER OR RESPONSIBILITY TO TAKE ACTION AGAINST OTHER PERSONS, SUCH AS SCHOOL INSTRUCTORS, WHO SUPERVISE, INSTRUCT OR ASSIST NON-STUDENTS IN PRACTICING DENTISTRY OR DENTAL HYGIENE DURING PARTICIPATION IN A PROGRAM AT THE SCHOOL?
The last question is whether the Dental Board has the power or responsibility under the Act to take action against persons who supervise, instruct or assist non-students in practicing dentistry or dental hygiene on human subjects during participation in a program at the School.
The Act provides that a licensed person or holder of a permit who authorizes or aids "an unlicensed person to practice dentistry, to practice dental hygiene or to perform a function for which a permit from the Board is required," is subject to administrative penalties.See 59 O.S. 2001, § 328.32[59-328.32](A)(5), (6), (7). Whether an action taken by a licensed School official or instructor as part of a School program could be considered authorizing or aiding an unlicensed person to practice dentistry or dental hygiene is a question of fact beyond the scope of an Attorney General's Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
The Dental Board may also bring an action for injunctive relief against a licensed person who aids or abets the unlicensed practice of dentistry or dental hygiene. 59 O.S.Supp. 2008, § 328.49[59-328.49](D). Thus, persons including, for example, instructors at the School could be the subject of an action by the Dental Board for an injunction for aiding or abetting the unlicensed practice of dentistry or dental hygiene. Additionally, the Dental Board, as noted in Part III above,shall report the aiding and abetting of the unlicensed practice of dentistry or dental hygiene to the appropriate district attorney. Id. § 328.49(C)(1).
 It is, therefore, the official Opinion of the Attorney General that:
 1. The Oklahoma Board of Dentistry does not have the authority under the Dental Act, 59 O.S. 2001 Supp. 2008, §§ 328.1 — 328.51a, to determine whether the School of Dentistry of the University of Oklahoma may offer a "Community Dental Health Coordinator Program" in which a person, upon completion, becomes a Community Dental Health Coordinator, a dental heath worker who is neither a dentist nor a dental hygienist. That authority lies with the Oklahoma State Regents for Higher Education and the University of Oklahoma Board of Regents. OKLA. CONST. art. XIIIA, § 2; *Page 12 OKLA. CONST. art. XIII, § 8; 70 O.S. 2001 Supp. 2008, §§ 3206, 3305, 3308.
 2. A participant in a program at the School could conduct acts considered the practice of dentistry or dental hygiene during any part of a program conducted by the School, only if the participant is a "student" in the School and is supervised as required by the Dental Act. 59 O.S. Supp. 2008, § 328.19[59-328.19](B)(5). If a program participant is not a "student" he or she could not practice acts of dentistry or dental hygiene. Id. Whether a program participant would be considered a student by the School is a question of fact beyond the scope of an Attorney General's Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
 3. Should the requirement of Answer Number 2 above that the participant be a student not be met, the Dental Board may seek injunctive relief, as provided by the Act, against participants in a program at the School who practice dentistry or dental hygiene illegally. 59 O.S.Supp. 2008, § 328.49[59-328.49](D).
 4. Should the requirement of Answer Number 2 above that the participant be a student not be met, the Dental Board has the power to seek administrative sanctions against persons licensed by the Dental Board or who hold permits from the Dental Board for authorizing or aiding the illegal practice of dentistry by a participant in a program at the School. 59 O.S. 2001, § 328.32[59-328.32](A)(5).
 5. The Dental Board has the duty to inform the appropriate district attorney of a violation constituting the illegal practice of dentistry or dental hygiene, or of aiding or abetting such practice. 59 O.S.Supp. 2008, § 328.49[59-328.49](C).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
GRETCHEN GROVER HARRIS ASSISTANT ATTORNEY GENERAL
[1] "`Dentistry' means the practice of dentistry in all of its branches[.]" 59 O.S.Supp. 2008, § 328.3[59-328.3](4). "`Dentist' means a graduate of an accredited dental college who has been issued a license by the Board to practice dentistry as defined in Section 328.19 of this title[.]" Id. § 328.3(5). The acts which constitute the practice of dentistry are set out at 59 O.S.Supp. 2008, § 328.19[59-328.19](A).
Dental hygiene is not defined in the Act. The activities which constitute dental hygiene are set out in the Act. See
59 O.S. 2001, § 328.34[59-328.34]. A dental hygienist is "an individual who has fulfilled the educational requirements and is a graduate of an accredited dental hygiene program and who has passed an examination and has been issued a license by the Board and who is authorized to practice dental hygiene as hereinafter defined[.]" 59 O.S.Supp. 2008, § 328.3[59-328.3](7). The practice of dental hygiene is not prevented simply because a person does not have a license to practice dentistry. See id. § 328.19(B)(5).
[2] The Dental Board is also authorized to define and regulate the position of dental assistant. See 59 O.S.Supp 2008, §§ 328.3[59-328.3](8), 328.29(A). The Dental Board has done so through promulgation of rules. OAC 195:15-1-3; 15-1-4; 15-1-5.
[3] While dentistry is specifically authorized to be operated and governed in the School by legislative enactment, dental hygiene is not so clearly authorized. The general language that the "School of Dentistry shall have regular courses leading to degrees, and such other special courses as approved by the Oklahoma State Regents for Higher Education" provides the authority for the dental hygiene program at the School. See id.
[4] Whether any particular program, including the the CDHC Program, has been appropriately authorized by the University Board of Regents or the State Regents is beyond the scope of this Opinion concerning the authority of the Dental Board to authorize courses at the School. 74 O.S. 2001, § 18b[74-18b](A)(5).
[5] As stated in the Clay Letter the School is not, at the present time, giving either on-line or clinical instruction to participants in the CDHC program. Id. p. 3. Additionally, "the precise nature of the clinical training and internship is still evolving. . . . [N]one of the Pilot Program participants have performed any dental services on human subjects as a part of this Program." Id. p. 4.
[6] It is clear from the controlling statutes that the practice of dentistry may not be undertaken at the School by individuals who are not students at the School. The Clay Letter, at p. 4, states that the School does not plan to "grant authorization" for participants in the Pilot Program to "undertake the practice of dentistry on human subjects." It further states there are facilities at which clinical training might occur such as those operated by the Indian Health Service or by Native American tribes.See Clay Letter, p. 4. Additionally, according to the School, the CDHC could practice in facilities operated by Federally Qualified Health Centers, Indian Health Service Clinics or tribally run health facilities in rural Oklahoma. See Clay Letter, p. 2. Whether the assumptions in the Clay Letter that such training or implementation could legally take place in the future is beyond the scope of this Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
[7] There seems to be no similar exception for clinical services by dental hygiene students. The statute listing the acts constituting dental hygiene contains no "student" exception.See 59 O.S.Supp. 2008, § 328.34[59-328.34]. An inquiry of how the School generally provides for clinical training for dental hygiene students who are not yet licensed is beyond the scope of this Opinion, which addresses only the question of what, if any, clinical dental or dental hygiene services could be undertaken by participants in the CDHC program who are not students. 74 O.S. 2001, § 18b[74-18b](A)(5).
 *Page 1